PHARMACEUTICAL MANUFACTUR-
ERS ASSOCIATION, a Delaware non-
profit membership association, Plaintiff,

American College of Obstetricians &
Gynecologists; National Association of
Chain Drug Stores, Inc.; American Soci-
ety of Internal Medicine; Private Medi-
cal Care Foundation, Inc.; Congress of
County Medical Societies, Inc.; The Pot-
tawatomie County Medical Society, Inc.;
The Oklahoma State Medical Associa-
tion; Francis A. Davis, M.D., Interven-
ing Party Plaintiffs,

v.

FOOD AND DRUG ADMINISTRATION,
Joseph A. Califano, Sec. of HEW, Don-
ald Kennedy, Comm. of Foods and
Drugs, Defendants,

Consumers Union of U. S., Inc., Consumer
Federation of America, National Wom-
en's Health Network, Women's Equity
Action League, Intervening Party De-
fendants,

National Association of Chain Drug
Stores, Inc., Plaintiff Intervenor,
Appellant.

No. 80–1455.

United States Court of Appeals,
Third Circuit.

Argued Oct. 16, 1980.

Decided Nov. 5, 1980.

Joel E. Hoffman (argued), Anthony L.
Young, Gloria C. Phares, Wald, Harkrader

& Ross, Washington, D. C., Richard L. Sutton, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Thomas D. Quinn, Jr., Reasoner, Davis & Vinson, Washington, D. C., for National Ass'n of Chain Drug Stores, Inc.

Nancy C. Garrison (argued), Barry Grossman, Sanford M. Litvack, Washington, D. C., Nancy L. Buc, Michael P. Peskoe, Rockville, Md., Peggy L. Ableman, Wilmington, Del., for Food & Drug Administration, et al.

Marcia D. Greenberger, Washington, D. C., (argued), Nancy Duff Campbell, Women's Rights Project Center for Law and Social Policy, Washington, D. C.

* Hon. Edward N. Cahn, United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

1. 21 C.F.R. § 310.515 (1980) provides:

(a) The Commissioner of Food and Drugs concludes that the safe and effective use of drug products containing estrogens requires that patients be fully informed of the benefits and risks involved in the use of these drugs. Accordingly, except as provided in paragraph (e) of this section, each estrogen drug product restricted to prescription distribution, ... shall be dispensed to patients with labeling in lay language containing information concerning effectiveness, contraindications, warnings, precautions, and adverse reactions. The patient labeling shall be provided as a separate printed leaflet independent of any additional materials.

(b) The patient labeling shall specifically include the following:

(1) Name of the drug.

(2) Name and place of business of the manufacturer, packer, or distributor.

(3) A statement regarding the proper use of estrogens, particularly short-term use in moderate to severe vasomotor symptoms of the menopause and prevention of breast engorgement. It is to be stated that estrogens are not indicated for certain conditions, i. e., nervousness, preservation of supple skin, or maintenance of a youthful feeling. The limited usefulness in preventing breast engorgement is also to be noted.

(4) A warning regarding the most serious dangers of estrogens and the relative risk in users versus nonusers, where known, including:

(i) Endometrial carcinoma. The importance of minimizing dose and duration of use is to be stressed, as is the importance of using estrogens only when necessary. A statement indicating that women who have had total hysterectomies have no risk of endometrial carcinoma.

Aida Waserstein, Bader, Dorsey & Kreshtoll, Wilmington, D. C., for Consumers Union of U. S., Inc., et al.

Before HUNTER and WEIS, Circuit Judges, and CAHN,* District Judge.

## OPINION OF THE COURT

### PER CURIAM:

In this appeal, the National Association of Chain Drug Stores, Inc. challenges the Food and Drug Administration's authority to promulgate 21 C.F.R. § 310.515 (1980).[1] The challenged regulation requires that patient package insert be provided to

.     .     .     .     .

(d)(1) Patient labeling for each estrogen drug product shall be provided in or with each package of the drug product intended to be dispensed or administered to the patient. However, patient labeling for drug products dispensed in acute care hospitals or long-term-care facilities will be considered to have been provided in accordance with this section if provided to the patient prior to administratrion [sic] of the first dose of estrogen and every 30 days thereafter, as long as the therapy continues.

(2) In the case of estrogen drug products in bulk packages intended for multiple dispensing, and in the case of injectables in multiple-dose vials, a sufficient number of patient labeling pieces shall be included in or with each package to assure that one piece can be included with each package or dose dispensed or administered to every patient. Each bulk package shall be labeled with instructions to the dispensor to include one patient labeling piece with each package dispensed or, in the case of injectables, with each dose administered to the patient....

(3) Any estrogen drug product restricted to prescription distribution, except as noted in paragraph (e) of this section, that is not labeled as required by this section and that is either introduced or delivered for introduction into interstate commerce, or held for sale after shipment in interstate commerce is misbranded pursuant to section 502 of the act. However, an estrogen drug product in the possession of a wholesaler or retailer before the effective date of this section is not misbranded if adequate numbers of copies of the patient labeling are furnished to the wholesaler or retailer to permit any retail purchaser after the effective date to obtain such labeling with the product. The requirement that any estrogen drug product be dis-

every patient receiving certain estrogen drugs. In a thorough and well–reasoned opinion, Judge Stapleton, of the District of Delaware, set forth the statutory grounds for the FDA's regulation.[2] We affirm the judgment of the district court.

Responding to the recent studies linking postmenopausal use of estrogens with endometrial cancer,[3] the FDA conducted hearings and published the estrogen regulation. Although the FDA has broad statutory authority to protect the public health by "[making] . . . such rules and regulations as may be necessary to carry out the provisions of [The Federal Food, Drug and Cosmetic Act of 1938, 21 U.S.C. § 301 *et seq.* (1976)]," [4] the FDA must exercise that power pursuant to a Congressional objective expressed elsewhere in the Act. *Mourning v. Family Publications Services, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973).

In the instant case, the district court found, and this Court affirms, that the Agency promulgated the challenged regulation in order to effectuate the objectives reflected in Section 502(a) of the Act, 21 U.S.C. § 352(a) (1976). Section 502(a) authorizes the Agency to act if it finds a drug's labeling to be false or misleading, as those terms are defined in Section 201, 21 U.S.C. § 321 (1976) of the Act. The FDA found that, without the patient package insert, the estrogen labeling was "misleading" because it failed to reveal facts "with respect to consequences which may result from the use of the article to . . . under the conditions of use prescribed in the labeling . . . or under such conditions of use as are customary or usual." 21 U.S.C. § 321. On

its face, therefore, the Act authorizes the Agency's actions.

We reject appellant's argument that the legislative history of the 1938 Act, read in conjunction with the Durham–Humphrey Amendments to the Act in 1951 (Section 503(b)(2), 21 U.S.C. § 353(b)(2) (1976)), requires a contrary decision. Section 503(b)(2) exempted prescription drugs from some labeling requirements but not from those presently in issue. The Senate Report states:

> Paragraph (2) of the new subsection (b) provides that a drug dispensed on prescription shall be exempt from the provisions of the act relating to misbranding of drugs except those which specify that a drug shall be deemed to be misbranded if its labeling is false or misleading in any particular (Sec. 502(a)) . . . *These provisions continue to apply to any drug subject to the act, whether sold over–the–counter or on prescription.*

(emphasis added). S.Rep.No.946, 82d Cong., 1st Sess. 9–10 (1951), *reprinted in* [1951] U.S.Code Cong. & Ad.Serv., pp. 2454, 2462. Thus, while Congress closed the door on one statutory ground for FDA supervision of the labeling of prescription drugs, it appears to have left open Section 502(a) as a separate passageway through which the FDA may require patient package inserts.

Accordingly, the district court's judgment will be affirmed.

---

pensed with patient labeling, as applied to physicians. who dispense or administer the drug, will not be effective for supplies in their possession on the effective date, but will apply only to supplies received thereafter.

· · · · ·

(f) The Food and Drug Administration has available patient labeling for estrogens that includes information responsive to all items specified in paragraph (b) of this section. The labeling has been published in the FEDERAL REGISTER as part of DESI notice, and updated versions will continue to be published as guides as changes occur. Any person may rely on the latest published version of

this labeling as complying with paragraph (b) of this section.

2. *Pharmaceutical Mfrs. v. Food & Drug Admin.*, 484 F.Supp. 1179 (1980).

3. *See generally* 41 Fed.Reg. 43,108 (1976) (Proposed rule).

4. *United States v. Nova Scotia Food Products*, 568 F.2d 240, 246 (2d Cir. 1977), *quoting Mourning v. Family.Publications Services, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973).